# TRUST AGREEMENT

THIS AGREEMENT and DECLARATION OF TRUST, effective June 3, 1985, made by and between RHODE ISLAND CHAPTER, ASSOCIATED GENERAL CONTRACTORS OF AMERICA, INC., a Rhode Island nonbusiness corporation, and Construction Industries of Rhode Island, a voluntary unincorporated association, collectively ("Employer") or ("Association"), on the one hand, and Rhode Island Laborers' District Council, Laborers' International Union of North America, a voluntary unincorporated association ("Union") on the other hand.

## WITNESSETH:

WHEREAS, the Employer and the Union have entered into Collective Bargaining Agreements which obligate the Employer to make payments to a retirement annuity program for Employees represented by the Union; and

WHEREAS, in order to carry out such obligations and to effectuate such program, the parties have determined to establish a trust fund to receive Employer contributions and by which there may be provided, for Employees covered by such Collective Bargaining Agreement, retirement benefits and such other benefits incidental thereto as the Trustees may determine; and

WHEREAS, the parties thereto have been duly authorized and have the power to enter into this Trust Agreement;

NOW, THEREFORE, in consideration of the foregoing, the parties agree as follows:

ARTICLE I

Definitions

The following definitions shall govern the following terms when used in this Trust Agreement unless otherwise required by the context:

1.1 "Collective Bargaining Agreement": A contract between an Employer and a Union and any supplement, amendment or continuation thereof which requires the Employer to make payments for a retirement annuity program for its Employees.

1.2 "Employer": An employer who is obligated under a Collective Bargaining Agreement with a Union whether executed by itself or by an association of Employers of which it is a member on its behalf, to make payment for a retirement annuity program for Employees covered by the Collective Bargaining Agreement and which, in conjunction with the Union, subscribes to this Agreement or any document whereby it accepts the terms of this Agreement.

1.3 "Union": Rhode Island Laborers' District Council, Laborers' International Union of North America, which has a collective bargaining agreement with an Employer which requires payment by the Employer for a retirement program for Employees covered by the Collective Bargaining Agreement and which in conjunction with the Employer subscribes to this Agreement or to any document which incorporates this Agreement by reference.

1.4 "Employee": An employee in a bargaining unit represented by a Union in the employ of an Employer.

1.5 "Contributions": Payments to the Fund required of an Employer by a collective bargaining agreement.

1.6 "Trustees": The trustess of this Trust and their successors.

1.7 "Insurer": Any insurance company which insures any of the beneficiaries of the Trust or their retirement or other incidental Benefits through a group insurance policy issued to the Trustees.

1.8 "Policy": Any policy or policies of group insurance, or individual annuity policies secured and held by the Trustees for the purposes of this Trust.

1.9 "Trust": The trust established by this Agreement.

1.10 "Trust Fund": All property, monies and contract rights held by the Trustess pursuant to this Agreement.

1.11 "Eligible Persons": All persons whom the Trustees, under the powers conferred upon them by this Agreement, make eligible for the Benefits provided hereunder.

1.12 "Plan", "Plan of Benefits" or "Benefits": Plan of retirement and incidental benefits adopted by the Trustees and as amended from time to time.

1.13 "Participant": Shall have the same meaning as that term is defined in the Plan.

1.14 "Administrator": The Board of Trustees.

## ARTICLE II

## Creation of Trust

2.1 Establishment and Identification

There is hereby establised a Trust which shall be known as the RHODE ISLAND LABORERS' ANNUITY FUND, and the

Trustees may hold property, exercise the powers set forth therein and those necessary to accomplish and enter into contracts, and in all matters act in behalf of the Trust in that name. This Trust shall be used for the purposes herein set forth. There shall be an equal number of Trustees appointed by Employers and by the Union at all times.

2.2 Purpose

This Trust is established for the purpose of providing a retirement program and other incidental Benefits for Eligible Persons who may from time to time be beneficiaries hereunder.

## ARTICLE III

## The Trustees

3.1 Number of Trustees

There shall be eight (8) Trustees of this Trust. Of this number, two shall be appointed by each Association and four (4) by the Union.

3.2 Appointment of Trustees

The following persons are hereby appointed Trustees of this Trust:

| Trustees Appointed by Union | Trustees Appointed by Association |
| --- | --- |
| Ronald M. Coia | Alvan B. Conway |
| Armando Sabitoni | Stephen A. Cardi |
| Alfred Arruda | Antonio B. Cardi |
| Manuel Sousa | Michael Gammino |

The Trustees shall serve until their death, incapacity, resignation or removal.

3.3 Removal of Trustees

An Employer Trustee may be removed by the Association which apointed him or her. The removal shall be effective when the Trustees receive written notice signed by an officer of the Association or at such later date as may be specified in the notice. A Union Trustee may be removed by the Union. The removal shall be effective when the Trustees receive a written notice signed by the president or acting president of the Union or at such later date as may be specified in the notice. Notice to the Trustees shall be considered given when the notice is delivered to each Trustee or to the office of the Fund Administrator.

3.4 Resignation of Trustee

A Trustee may resign and be discharged from further duties or liabilities under this Trust by giving at least thirty (30) days' written notice to the party having the power to appoint his or her successor and at the same time giving a copy of such notice to each Trustee or in lieu thereof to the office of the Fund Administrator. The party and the resigning Trustee may agree to a shorter period of time.

3.5 Appointment of Successor Trustees

Whenever a vacancy occurs in the office of a Trustee it shall be filled by a successor Trustee appointed by the Association or Union which appointed the Trustee whose removal, death, disability or resignation caused the vacancy. Written notice of such appointment shall be given by the Association or Union, as the case may be, to the Trustees and the appointment shall be effective as of the date set forth in

the notice, provided it shall not become effective until the appointee tenders an acceptance in writing to the Trustees by delivery thereof to the office of the Fund Administrator.

3.6 Trustees' Title

In case of the death, resignation, refusal or inability to act of any one or more of the Trustees, the remaining Trustees shall have all the powers, rights, estates and interests of this Trust, and shall be charged with its duties; provided that in such cases, no action may be taken unless it is concurred in by a least one Trustee appointed by each Association and two Union Trustees.

3.7 Trustee Officers

The Trustees shall elect from among themselves a chair and a secretary each to serve for a term of one year. One such officer shall be an Association Trustee and one shall be a Union Trustee. The Trustees may also choose such other officers as they deem desirable, and the Trustees shall determine what responsibilities each office shall have.

3.8 Meetings

All actions by the Trustees shall be by majority decision of the Employer and the Union Trustees, provided, however, the majority must include the vote of one Trustee appointed by the Constructon Industries of Rhode Island and the vote of one Trustee appointed by the Rhode Island Chapter, Associated General Contractors of America, Inc. In the event any matter presented for decision cannot be decided because of lack of a decisive vote, or because of the lack of a quorum at

two consecutive meetings, the matter may then be submitted to arbitration as hereinafter provided.

3.9 Action Without a Meeting

Action may also be taken and a decision made by the Trustees without a meeting provided such action or decision is evidenced by a written instrument signed by all of the Trustees.

3.10 Execution

A certificate signed by the Trustees shall be evidence of the action of the Trustees. Whenever the signature of the Trustees is required on any such certificate or on any other instrument, only the signature of one Association Trustee and one Union Trustee shall be required; and as to any persons doing business with the Trustees, any such certificate or other instrument so signed shall conclusively be presumed to be authentic, and all facts and matters stated therein shall conclusively be presumed to be true, and such persons may rely on such certificate or other instrument for all purposes.

3.11 Failure of Trustees to Agree

Whenever the Association and the Union Trustees are deadlocked on any matter submitted for their concurrence with respect to the administration of the Trust, the Trustees shall appoint an impartial umpire to decide such dispute. If the Trustees fail to agree upon an impartial umpire within ten (10) days after the issue upon which the Trustees are deadlocked was first voted upon, the majority of either the Association or the Union Trustees may petition the United Sta

tes District Court for the district where the Trust has its principal office for appointment of an impartial umpire to decide such dispute. The decision of any impartial umpire appointed by either the Trustees or the Court shall be conclusive and binding on all of the Trustees; provided, however, the arbitrator shall have no authority to alter, amend or change any of the terms or conditions of the Trust or any Plan of Benefits adopted by the Trustees including insurance contracts by which Benefits are provided.

3.12 Office of the Trust

The Trustees shall maintain a principal Trust office at Cranston, Rhode Island, for the purpose of administering this Trust, maintaining all records considered necessary or desirable by the Trustees and receiving all commmunications and notices to the Trustees. The person in charge of the office of the Trust shall be responsible for notifying each Trustee of all pertinent notices which this instrument requires to be given to each of the Trustees.

3.13 Appointment of Administrator

The Trustees may delegate to an administrator, one or more of the Trustees or to any other competent person or persons such of their duties as a reasonable prudent businessman would delegate to an agent, including but not limited to the billing of Employers, collection of Contributions, keeping of the Trustees' records, the payment of insurance premiums, investment of monies and the writing of checks for purposes expressly specified in a written delegation

of authority and as permitted by the Employee Retirement Income Security Act of 1974 (ERISA), as it may be amended. The Trustess shall notify the Insurer and any bank in which Trust funds are on deposit of the authority of such person or persons and of any change in such authority. Copies of such written authority shall be delivered to the Insurer and such bank.

3.14 Bonds and Insurance

The Trustees shall procure such fidelity or faithful performance bonds in such amounts and covering such persons as may be required by any applicable laws. They may in their discretion obtain additional such bonds, or bond in additional amounts, as they deem necessary for the protection of the Trust. The cost of such bonds shall be paid from the Trust Fund. The Trust may at its expense purchase fidelity insurance covering losses incurred by action or inaction of the Trustees or any other fiduciary.

3.15 Compensation and Expenses

The Trustees may receive reasonable compensation for their services; provided, however, those Trustees who because of their employment are ineligible for compensation under ERISA shall not receive the same. The Trust Fund shall be charged with all reasonable expenses incident to this Trust incurred by the Trustees or any of them, including charges and compensation of all such agents, actuaries, auditors, accountants, insurance advisors, investement advisors, and attorneys as in the judgment of the Trustees shall at any time be needed for the purposes of this Trust. The Trust may

advance to a Trustee a reasonable sum to cover expenses of a Trustee to be incurred in the immediate future in the performance of his or her duties.

ARTICLE IV

Powers and Duties of Trustees

4.1 Establishment of Retirement Program

The Trustees may apply for a group insurance policy or policies from an Insurer or Insurers licensed to do business in the states of New York and Rhode Island. Such policy or policies shall provide for retirement Benefits and other Benefits incidental thereto as the Trustees may determine as authorized herein. The Trustees shall have the discretion to determine the character and amount of each such Benefit as in their opinion the Trust Fund is financially able to maintain. The Trustees may in their discretion provide any or all such Benefits directly from the Trust Fund without obtaining policies of insurance for the same.

4.2 Determination of Eligibility

The Trustees shall have full authority to determine the requirements with which an individual must comply in order to be eligible for Benefits and determine all of the terms and conditions of eligibility of Eligible Persons for the purpose of this Trust; and also, under such circumstances and conditions as they may determine--but in no event under conditions which would decrease Benefits otherwise available to Employees--may make Benefits available for or on account of the Full time Employees of the Union.

4.2 Maintenance of Group Insurance Policies

The Trustees, from Trust Funds available, shall pay the premiums on group insurance policies obtained by them pursuant to a Plan provision. The Trustees shall be the policyholder on all such policies. The Trustees shall have the power to terminate and change group insurance policies as in their discretion they may determine for the purposes of this Trust.

The Trustees may enter into any agreement with an Insurer which is permitted by ERISA and which they in their absolute discretion deem to be in the best interest of this Trust, including but not limited to the following:

(A) Agreements whereby the experience under any policy or policies issued to the Trustees may be pooled with the experience of other policyholders of the Insurer which are "qualified plans" under Section 401(a) of the Internal Revenue Code of 1954 or such similar section in the event of amendment thereof.

(B) Agreements whereby the Trustees may deposit certain sums with an Insurer, which sums may be used by the Insurer as premium under the policy or policies issued to the Trustees or may be used for payment of claims or for other purposes connected with such policy or policies.

(C) Agreement in respect of the calculation of any payment, or other disposition of any experience rating refunds, dividends or other credits to be paid to the Trust by an Insurer.

In the absence of any such agreement, any experience rating refunds, dividends or other credits paid to this Trust shall be used for the general purposes of this Trust as the Trustees in their discretion shall determine.

4.3 Agreements with Other Trustees

The Trustees may enter into such agreements, which are permitted by ERISA and conform thereto, as they may deem desirable with the trustees of any other multi-employer retirement trust or trusts which comply with the provisions of 29 USC Section 186(c)(5) and are "qualified plans" under Section 401(a) of the Internal Revenue Code of 1954 or such similar section in the event of amendment thereof and which provide for any or all of the following:

(A) Joint administration of such trusts.

(B) Pooling of premiums, costs, claims and other factors pertaining to the insurance experience of the trusts for purposes of equalizing costs or for any other purposes deemed desirable by the Trustees.

(C) Guarantees of premium liabilities of each of the trusts or deposit of money or other security providing such guarantees.

(D) Agreements specified in this Section with trustees of other pension plans and/or trusts which have been "qualified" under Section 401(a) of the Internal Revenue Code of 1954 or a similar provision of a successor law or code to which other local unions or district councils of the Laborers' International Union of North America are parties, whether such

other local unions or district councils are located in Rhode Island or elsewhere, provided any such agreements shall be submitted to the United States Treasury and/or Labor Department for approval, if required by law. In such agreements, the Trustees may agree with the trustees of such other plans and/or trusts to exercise any and all of the powers, duties, rights or obligations granted to those trustees under the agreements and declaration of trust establishing such other plans and/or trusts; may provide that such agreements be binding on their successor trustees and on the parties to this Agreement; may provide for reciprocity of coverage of Employees or employees under such other plans and/or trusts or for the acceptance and transfer of monies for the account of an Employee in connection with such agreement, and may determine that this Trust and another trust or trusts may provide for payment of a partial retirement Benefit to an Employee from this Trust and a partial retirement benefit to him or her from one or more other such trusts; provided, however, that any such agreement shall be executed only if the Trustees are satisfied that such arrangement or agreement is consistent with sound actuarial principles and does not otherwise discriminate against Employees as a class. Anything herein to the contrary notwithstanding, however, no such agreement shall require any Employer to contribute to more than one pension trust fund on behalf of any Employee for any hour worked by such Employee.

(E) Such other matters as may in the discretion of the Trustees be in the best interests of this Trust or a more efficient administration hereof.

(F) Agreements to merge this Trust into any other trust or to accept the merger of another trust into this Trust, provided such other trust has the same basic purposes as this Trust; and provided further, that the Association and the Union which are parties to this Agreement each accept in writing the conditions of such merger.

4.4 Receipt of Employers' Contributions

The Trustees shall establish a uniform system for the timely transmission of reports and Contributions from Employers and establish a periodic date on which such reports and Contributions shall be due if not set forth in a collective bargaining agreement of an Employer. The Trustees shall notify any Employer immediately of a delinquency or a mistake or discrepancy in a report or Contribution. Where an Employer fails to make timely payment of Contributions or refuses to make a correct report, the Trustees may terminate the Employer from further participation in this Trust by sending a notice of termination to the Employer's address as it appears in the records of the Trust and to the Union which is the collective bargaining representative of the Employees of the Employer at its address of record. Such notice shall state the cause for termination and shall state the date on which insurance and/or Benefits for the Employer's Employees or other Eligible Persons terminates; provided, however, that in no event shall insurance or other Benefits terminate prior to the last date for which eligibility for such insurance coverage or other Benefits existed by reason of Contributions paid to the fund; and

provided further, that Benefits which are non-forfeitable as provided by law or in the Plan shall not be forfeited by such notice or termination.

4.5 Suits for Collection

If the Trustees bring suit against any Employer to collect any delinquent Contribution or Contributions, the Employer also shall be liable for audit expenses, costs of filing suit and reasonable attorney's fees.

4.6 Records and Annual Audit

The Trustees shall maintain complete records of all transactions of the Trust, including complete and up-to-date lists furnished by Employers of Eligible Persons for whom Contributions have been made. The Trustees shall provide for an audit to be made annually or semi-annually as they shall determine by a Certified Public Accountant, the cost of which shall be borne by the Trust. This Agreement, the Plan, copies of all reports required by law to be filed with an agency of the United States, the most recent Certified Audit report and any documents required by law to be made available for inspection of "interested persons" shall be maintained at the Fund Office available for inspection under reasonable conditions during normal business hours. Any "interested person" who is entitled to copies of any such documents at his or her request, shall be required to pay to the Fund the reasonable estimated cost of copying the same at the time such request is made unless he or she is entitled to the same without charge by law. For the purposes of this Section only,

"interested persons" are those persons who by law or by the terms of this Agreement are entitled upon request to inspect any records of the Fund.

4.7 Deposits and Reserves

The Trustees may accumulate in the reserves of the fund Contributions from Employers newly admitted to this Trust for such number of months as the Trustees may determine on a non-discriminatory basis, before providing any Benefits on account of such Employer's Employees. Before making a determination of a waiting period before the Benefits are granted, the Trustees shall obtain an actuarial report of the effect on the Plan of the inclusion of Employees of newly admitted Employers unless the number and/or the ages of such Employees named have a de minimis actuarial effect.

4.8 Reports

The Trust shall make such reports and file such information with appropriate public authorities as may be required by applicable laws to maintain the Plan as a "qualified plan" under Section 401(a) of the Internal Revenue Code of 1954, as amended, or any successor law or code to the end that Employer contributions will be an ordinary expense deductible from income.

4.9 Audit of Employer Records

The Trustess shall have the right, themselves or through any authorized representative, to audit such books and records of any Employer as may be necessary to determine if all liabilities of such Employer to the Trustees have been paid,

and to determine that the correct Contributions have been received for all persons for whom the Employer is required to make Contributions. The Trustees may authorize an Insurer or its authorized representatives to make such audit. Each Employer who becomes a party hereto or consents to be bound by the terms hereof agrees to make such books and records available at all reasonable times so that such audits may be conducted. If any Employer fails to allow such audit, the Trustees may terminate Plan Benefits, except those which are non-forfeitable by law, of the Employees of such Employer and all other Eligible Persons for whom such Employer is responsible to pay Contributions. However, the Trustees shall continue to have such rights to audit after termination of such Benefit. In the event the audit which was initially rejected by the Employer is completed, Benefits shall be restored to Eligible Persons of the Employer to the extent and in the amount provided in the Plan, as if an audit had not been rejected by the Employer.

4.10 <u>Officers' Certificates</u>

The Trustees may rely on certificates from officers of Association, an Employer or a Union to establish the facts stated in such certificates.

4.11 <u>Rules and Regulations</u>

The Trustees may prescribe such rules and regulations including rules of eligibility, for Benefits as may in their discretion be deemed proper or necessary for the sound and efficient administration of this Trust, provided the rules

and regulations shall not be inconsistent with the provisions of this Agreement or the Collective Bargaining Agreement in effect when this Trust is adopted. When the rules adopted shall in any way conflict with a subsequent collective bargaining agreement entered into by a Union and an Employer subject to this Trust, the Trustees shall forthwith amend the rules to comply with such subsequent collective bargaining agreement insofar as the Employees of that Employer are concerned. Nothwithstanding the foregoing, it is understood that the intention of the Union and Employers party to this Trust is to maintain the same provisions in their respective collective bargaining agreements for providing retirement and other incidental Benefits to their Employees and that rules and regulations governing such Benefits shall be those adopted by the Trustess.

ARTICLE V

Miscellaneous

5.1 Additional Employer Parties

It is anticipated that employers which are neither parties to this Agreement nor represented by a party to this Agreement when it is first executed, will later become Employers as defined herein. Any employer which has a collective bargaining agreement with a Union requiring Contributions to this Trust may participate in the Trust and upon approval of the Trustees become an Employer party hereto by executing this Agreement, a counterpart thereof or a

Subscription Agreement in the form attached hereto and marked "Exhibit 'A'."

5.2 Additional Union Parties

It is anticipated that labor unions which are neither parties to this Agreement nor represented by a party to this Agreement when it is first executed will later come within the definition of Unions as set forth in Section 1.3 hereof. Upon consent of the Trustees, any labor union whose members are in the same or related occupations or trades as the Laborers' International Union of North America may upon approval of the Trustees become parties hereto by executing this Agreement, a counterpart thereof or a Subscription Agreement in the form attached hereto and marked "Exhibit 'A'." Once a union has become a party hereto in such manner, the Employers which have collective bargaining agreements with such union requiring Contributions to this Trust are eligible to participate herein as provided in Section 5.1 hereinabove.

5.3 Withdrawal of Certain Employees

Whenever Benefits have been provided for Employees of an Employer for which Employees the Employer is no longer obligated by a collective bargaining agreement to make Contributions, the Employer may withdraw such Employees from coverage of this Trust by giving at least sixty (60) days' written notice to the Trustees prior to the expiration date of its then collective bargaining agreement with a Union or such other lesser period as the Trustees shall permit, it being the intention of the parties that Employees shall be covered from

the time of their acceptance by the Trustees as beneficiaries of the Fund through the term of the then existing and any subsequent collective bargaining agreement which provides for the continuity of the Fund, until the Employer shall give the above notice of withdrawal. The Employer will remain liable to the Fund for any obligations it may have incurred for Contributions for such Employees prior to but not subsequent to the withdrawal date.

5.4 <u>Additional Powers and Obligations of the Trustees</u>

In addition to the powers incorporated herein the Trustees shall have the following powers and obligations:

A. The Trustees shall meet in Cranston, Rhode Island at least once each calendar quarter year, at a date and time set by the Chair, unless a quorum shall agree in advance that there is no business to come before the meeting. A quorum for such purpose or for transacting business at any meeting shall consist of not less than one Trustee appointed by the Rhode Island Chapter Associated General Contractors of America, Inc. and one Trustee appointed by Construction Industries of Rhode Island and two Trustees appointed by the Union.

B. Any two (2) Trustess may call a special meeting in Cranston, Rhode Island, by giving to the other Trustees at least five (5) days' written notice thereof by registered mail. The notice shall state the time and place of the meeting. At any meeting at which all Trustees not present have waived notice in writing, the giving of notice may be dispensed with.

C. No Trustee except as provided by law shall be liable for the acts or defaults of any Co-Trustee, the administrator or any agent or employee of the Trustees or for the default, refusal or failure of any insurance company to pay any Benefit or payment due or claimed to be due to any Employee or other beneficiary of any policy issued under the terms hereof, or for any negligent act, or for any act or omission, except for his or her own willful misconduct. Each Trustee signatory hereto acknowledges that he or she must perform his or her duties with the care, skill, prudence and diligence that a prudent man who is acting in such capacity and familiar with such matters would use under the circumstances prevailing at the time of the performance thereof.

D. The Trustees shall deposit all monies received by them in such bank or banks as they may designate for that purpose and may if they deem it advisable invest and reinvest such funds (as in their sole and absolute judgment are not required for current expenditures) in such securities as are legal for the investment of trust funds. In the event any such securities shall cease while held by the Trustees to be legal investments for trust funds, the Trustees may nevertheless in their sole discretion continue to hold and retain such securities in the Fund.

E. All funds held hereunder shall be subject to withdrawal by check, draft, voucher or otherwise only upon the signatures of one (1) Trustee appointed by Association and of one (1) Trustee appointed by the Union.

F. To demand, collect, receive and hold Contributions and to take such steps, including the institution or prosecution of or intervention in any proceeding in law, in equity or in bankruptcy, as may be deemed by the Trustees necessary or desirable to effectuate the collection of such Contributions.

G. To compromise, settle, arbitrate and release claims or demands in favor of or against the Trust Fund or the Trustees on such terms and conditions as the Trustees deem advisable; to commence and defend suits or legal proceedings whenever the Trustees deem that any interest of the Trust Fund so requires; and to represent the Trust Fund in all suits or proceedings against it in any court of law or equity or before any other body or tribunal.

H. To enter into any and all contracts and agreements for carrying out the terms of this Trust Agreement and for the administration of the Trust Fund.

I. To sell, exchange, convey, transfer or otherwise dispose of any property held by them by private contract or at public auction.

J. To make, execute, acknowledge and deliver any and all documents of transfer and conveyance and any and all other instruments that may be necessary or appropriate to carry out the powers herein granted.

K. To establish and accumulate as part of the Trust Fund a reserve or reserves adequate, in the opinion of the Trustees, to carry out the purposes of the Trust Fund and the Plan.

L. To appoint a bank or trust company as Custodian of all or any part of the Trust Fund.

M. To segregate any portion of the Trust Fund held by it into one or more separate accounts to be known as investment manager accounts. The Trustees shall appoint in writing an investment manager for each such investment manager account who is (i) registered as an investment advisor under the Investment Advisor's Act of 1940; or (ii) a bank as defined in the Investment Advisor's Act of 1940; or (iii) an insurance company qualified to manage, acquire or dispose of assets of the Plan under the laws of the states of New York and Rhode Island, provided that such investment manager has acknowledged in writing that it is a fiduciary with respect to the Plan. The Trustees shall provide a copy of any instrument appointing or terminating the authority of an investment manager to any custodian of the assets to which such appointment or termination of authority applies. Such investment manager shall have full discretion and authority to invest, reinvest or dispose of the assets of the Trust Fund in the investment manager account. The Trustees (or any custodian appointed by the Trustees) shall follow the direction of an investment manager in exercising the powers granted to the Trustees hereunder (or to the custodian under any custody agreement). All directions given by an investment manager shall be in writing, signed by an officer (or a partner) of the investment manager, or by such other person or persons as may be designated by an officer (or a partner) of the investment

manager. The investment manager may directly place orders for the purchase or sale of securities subject to such conditions as may be approved by the Trustees authorizing the investment manager to effect the transactions directly for its investment manager account; provided that the Trustees (or any custodian appointed by the Trustees) shall nevertheless retain custody of the assets comprising said account, unless the investment manager shall also be designated as custodian for such purpose. To the extent that assets are held in an investment manager account, the Trustees (or a custodian appointed by the Trustees) shall have no authority or discretion to manage such assets, and shall be under no duty to question or make inquiries as to any action or direction or any failure to give directions of any investment manager taken as provided herein or to review the securities held in any investment manager account or to make any suggestions to the investment manager with respect to the investment, reinvestment or disposition of investments in any investment manager account. The Trustees may at any time terminate the authority of an investment manager, in which event the Trustees shall either appoint a successor investment manager or direct that the portion of the trust Fund then held in such investment manager account shall no longer be segregated and shall return the same to the unsegregated portion of the Trust Fund.

N. To pay out of the Trust Fund any taxes of any kind levied or assessed under existing or future laws upon or in respect to the Trust Fund or any money, policies or other property forming a part thereof.

O. To make rules and regulations which are consistent with the terms hereof, and to do all acts and take any and all other actions, whether or not expressly authorized herein, and to refrain from doing any such acts and taking any such actions, all as the Trustees may deem necessary or advisable for the protection of the Trust Fund or the proper administration thereof.

P. To lease, purchase or rent premises, supplies or equipment and to exchange or dispose of the same as they may determine will discharge their duties more efficiently.

5.5 Amendments

This Agreement may be amended in writing at any time by the contracting parties named on Page One (1) hereof. However, this Agreement may not be amended so as to change its purpose as set forth in Section 2.2 hereof or permit the diversion or application of any of the Trust funds for any other purpose. No amendment shall be effective until a copy thereof is delivered to each of the Trustees or the Fund Office. The Trustees shall send a copy of any such amendment, bearing the necessary signatures, to each Insurer, if any.

5.6 Termination of Trust

This trust may be terminated at any time by consent in writing of the parties to this Agreement effective upon delivery to the Trustees.

This Trust may be terminated by the Trustees whenever there are no longer any Employers required to make Contributions thereto under a collective bargaining agreement.

This Trust shall terminate in any case upon the death of the last survivor of such persons who were living at the time of its creation who were eligible for Benefits under the first group insurance policy issued to the Trustees or the first Benefit Plan adopted by the Trustees whichever is earlier, unless, without the benefit of this provision, this Trust does not violate the Rule Against Perpetuities; in which case this Trust may continue in perpetuity unless otherwise terminated.

In the event of termination, the remaining funds available, after providing for all outstanding obligations, including compliance with the provisions set forth in the Plan upon termination thereof, shall be used in such a manner as will in the opinion of the Trustees best effectuate the purposes of this Trust, including but not limited to the purchase of insurance benefits, the provision of benefits in any other form or their transfer to another retirement trust; but in no event shall any of the funds revert to or be recoverable by an Employee, Employer or Union except as permitted by law and provided in the Plan.

5.7 <u>Liability for Benefits</u>

Neither the Union nor any Employer nor the Trustees, nor any officer, agent or member of them, shall be liable for the Benefits to be provided hereunder, and all such Benefits shall be payable or collectible only to the extent and in the manner provided for in the contracts of insurance purchased or otherwise provided pursuant to this Agreement.

However, nothing shall be construed herein to limit any rights any Employee or Union may have in law or in equity under a collective bargaining agreement against an Employer for failure to make Contributions to the Trust.

5.8 Rights in the Trust Fund

Neither any Employer nor any Trustee, nor any Employee, nor the Union, nor any beneficiary of the Trust or of the insurance policies issued to the Trustees shall have any right, title or interest in or to the Trust Fund or any part thereof except as specifically provided in this Agreement and the Plan. Neither the Trust Fund, nor any Contribution to the Trust Fund nor any Benefits provided through the Trust Fund shall be in any manner liable for or subject to the debts, contracts or liabilities of the Employer, the Union, any member thereof, an Employer or an Employee.

No part of the Fund or any Benefits payable shall be subject to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge by any person; provided, however, that the Trustees may pay or direct the payment of Benefits under the Plan to any person for the care of an Eligible Person to whom the Benefits are due and payable but who in the opinion of the Trustees after a reasonable investigation is unable to handle his or her own financial affairs.

Contributions to the Trust shall not constitute or be deemed to be wages due the Employees with respect to whose work such payments are made, and no person shall be

entitled to receive any part of the Contributions made or required to be made to the Trust in lieu of Benefits provided by the Fund.

5.9 Third Parties Doing Business With Trustees

No person, partnership, corporation or association doing business with the Trustees shall be obliged to see to the application of any funds or property of the Trust, or to see that the terms of the Trust have been complied with, or be obliged to inquire into the necessity or expediency of any act of the Trustees; and every instrument issued or caused to be issued by the Trustees shall be conclusive in favor of any person, partnership, corporation or association relying thereon that:

(a) at the time of delivery of such instruments the Trust was in full force and effect;

(b) said instrument was drawn and issued in accordance with the terms and conditions of this Trust Agreement; and

(c) the Trustees were duly authorized and empowered to execute such instrument.

No insurance carrier shall for any purpose be deemed a party to this Trust Agreement or be responsible for the validity or sufficiency thereof. Notwithstanding the fact that it may have knowledge of the terms of this Trust, the obligations of an insurance carrier shall be measured and determined solely by the terms and conditions of the policy or policies issued by it, and there shall be no obligations to any

person, partnership, corporation or association other than stated in such policy or policies.

5.10 Situs of Trust

This Trust is accepted by the Trustees in the State of Rhode Island and all questions pertaining to its validity, construction and administration shall be determined in accordance with the laws of such State.

5.11 Execution of this Agreement

This Agreement may be executed by the parties hereto in multiple counterparts and all of such counterparts so executed shall collectively constitute this one Agreement and shall be deemed to establish this one Trust.

5.12 Titles

The titles of the various Articles and Sections of this Agreement are inserted solely for convenience of reference and are not a part of, nor shall they be used to construe, any term or provision hereof.

5.13 Claims and Appeal Procedure

A. A claim shall be initiated by the filing of a completed and signed Claim Form. A Participant filing a claim ("Claimant") may obtain the necessary form for filing a claim by telephoning or writing to the Administrator. The claim will be processed as quickly as possible; if additional information is required, the Claimant will be notified and requested to furnish the necessary data.

B. Approval or denial of the claim will normally be made within ninety (90) days after the claim has been received by the Administrator. If additional time is required in special cases, the Claimant will be notified in writing of the special circumstances requiring an extension of time and of the date by which the Administrator expects to render the final decision, which will be not more than ninety (90) days from the end of the initial time period. Written notice of the extension shall be furnished to the Claimant prior to the commencement of the extension.

C. If the claim is wholly or partially denied, written notice will be mailed to the Claimant setting forth the specific reason or reasons for the denial, specific reference to pertinent Plan provisions on which the denial was based, a description of any additional material or information necessary for the Claimant to perfect his or her claim, an explanation of why such material or information is necessary and an explanation of the Plan's appeals procedure.

D. Any Claimant whose claim has been denied in whole or in part may request a full and fair review by filing a written application with the Fund Office not more that sixty (60) days after receipt by the Claimant of written notification of denial of the claim. The office of the Administrator by telephone, confirmed by letter, or by letter, will advise the

Claimant of the date and time on which the Claimant or his or her authorized representative may inspect the records pertaining to the claim or Benefit denied which are maintained in the Administrator's office, and Claimant shall receive an additional oral explanation from the Administrator of the reason or reasons for denial of the claim or Benefit.

E. (1) If after receiving the additional explanation described in Sub-Section D the Claimant is not satisfied that the denial of the claim or Benefit was in accordance with the terms of the Plan adopted by the Trustees, he or she may request a hearing before the Board of Trustees by letter addressed to the Board, in care of the Administrator, which must be postmarked not later than the tenth (10th) day after the date of the conference with the Administrator. The letter of appeal shall state in general terms the grounds on which the appeal is being made and what is considered to be erroneous in the original decision.

(2) The Claimant will be advised within ten (10) days of the receipt of such letter of appeal of the date, place and time at which the Trustees will give a hearing to the Claimant. The hearing date will be at least ten (10) but not more than thirty (30) days after the date of the Trustees' letter setting the time, date and place of appeal. At the hearing all records concerning the claim or Benefit denied

will be made available to the Claimant or to his or her authorized representative and he or she or his or her authorized representative may present any additional information in any form through witnesses or affidavits or other documentation which he or she or his or her authorized representative considers relevant to the appeal. The Board of Trustees may continue the hearing from time to time solely for the purpose of securing additional information concerning the appeal.

F. The decision following the hearing shall be made promptly, but not later than the date on which the meeting of the Board of Trustees which immediately follows the Administrator's receipt of a request for review, unless the request for review is filed within thirty (30) days preceding the date of such meeting. In such case, a decision may be made not later than the date of the second meeting following the Administrator's receipt of the request for review. If special circumstances require a further extension of time for processing, a decision shall be rendered not later than the third meeting of the Board of Trustees following the Administrator's receipt of the request for review.

G. For good cause shown, the Board of Trustees may extend or waive any time period in the appeal procedure at any step requiring an action to be taken by a Claimant to preserve his or her right of appeal.

H. In the event the Claimant is not satisfied with the decision of the Board of Trustees, he or she may make a demand for arbitration concerning the denial of the claim or Benefit which was submitted to the Board of Trustees in accordance with the Employee Benefit Plan Claims Arbitration Rules of the American Arbitration Association within ten (10) days of the postmark date of the Board of Trustees' decision. The decision of the arbitrator shall be final and binding on the Trust and the Claimant. The arbitrator shall have no authority to change, alter or amend any terms of the Agreement and Declaration of Trust, the Plan of Benefits adopted by the Board of Trustees, the rules of eligibility adopted by the Trustees or any insurance contract or policy.

IN WITNESS WHEREOF, the parties have caused these presents to be executed by their duly authorized officers this 17th day of August, 1985.

RHODE ISLAND CHAPTER, ASSOCIATED GENERAL CON-TRACTORS OF AMERICA, INC.

By: ______________________
President

By: ______________________
Secretary

RHODE ISLAND LABORERS' DISTRICT COUNCIL, LABORERS' INTERNATIONAL UNION OF NORTH AMERICA

By: ______________________
President

By: ______________________
Business Representative

CONSTRUCTION INDUSTRIES OF RHODE ISLAND

By: ______________________
President

By: ______________________
Secretary